**IN THE DISTRICT COURT OF GUAM**
**TERRITORY OF GUAM**

| | |
|---|---|
| CAMACHO FAMILY PARTNERSHIP d/b/a "DIRT DOKTOR," | CIVIL CASE NO. 13-00026 |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S FIRST MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| v. | |
| PATRICIAL I. ROMERO, INC., | |
| Defendant/Counterclaim Plaintiff, | |
| v. | |
| CAMACHO FAMILY PARTNERSHIP d/b/a "DIRT DOKTOR" and FIRST NET INSURANCE CO., | |
| Counterclaim Co-defendants. | |

## I.      INTRODUCTION

Before the court is Plaintiff Camacho Family Partnership's first Motion for Partial Summary Judgment against Defendant Pacific West Builders ("PWB") and its surety, Defendant Travelers Casualty and Surety Company ("Travelers"), for past due installment payments. (ECF No. 29.) The court took the matter on the briefs and announced its ruling from the bench without oral argument on October 7, 2016. The court now issues its written decision, for the reasons given herein, granting in part, on the claim for retention withheld by PWB in the amount of $42,855.02 covering work performed from December 2012 through February 2013, and denying in part, on the claim for installment payments in the amount of $627,452.31.

1

## II.    BACKGROUND

### A.  Procedural History

On December 31, 2013, Dirt Doktor filed a complaint alleging breach of contract and requesting (1) an award of $777,550.36 for unpaid work performed by Dirt Doktor and accepted by PWB, (2) an additional award of $221,753.65 as a "reasonable value" of the additional work of "demolishing and redoing the concrete slabs as ordered by PWB," and (3) for this court to declare that Dirt Doktor is not in default on the subcontract and is entitled to time extensions for its contract performance and monetary compensation as proved at trial. *See* Compl., ECF No. 1, at 4–5.

On February 3, 2014, PWB filed an answer and counterclaim. *See* Ans. & Counterclaim, ECF No. 10. PWB denied all allegations and counterclaimed for breach of contract, asking for damages, interest, and attorneys' fees. *See id*. at 10, 18. In the Answer, PWB also alleges a counterclaim against "counter-defendant" First Net Insurance Company. *See* Ans. at 10. Counterclaim Defendants Dirt Doktor and First Net filed their answer to the counterclaims. *See* Ans. to Counterclaims, ECF No. 13.

On December 10, 2014, Dirt Doktor filed a Miller Act claim against the surety company that bonded with PWB to be jointly and severally liable for the performance of the contract with the Government, Travelers Casualty and Surety Company of America ("Travelers"). *See* Civil Case No. 14-00021, ECF No. 1. On February 11, 2015, the Magistrate Judge consolidated that case with the present case. *See* Civil Case No. 14-00021, ECF No. 6.

On March 19, 2015, Dirt Doktor filed this Motion for Partial Summary Judgment, ECF No. 29, together with a Concise Statement of Material Facts and supporting exhibits and declarations (ECF No. 30). On April 9, 2015, Defendants Patricia Romero and Travelers filed an

opposition memorandum, together with declarations and exhibits (ECF No. 32). On April 22, 2015, Dirt Doktor filed a reply brief (ECF No. 36).

On February 25, 2016, Chief Judge Frances Tydingco-Gatewood recused herself from the case, and it was reassigned to the undersigned judge. (ECF No. 64.)

## B. **Factual Background**

Plaintiff, a resident of Guam, is a partnership and general contractor doing business as Dirt Doktor. (Compl. ¶ 1; Counterclaim ¶ 2; Ans. to Counterclaims ¶ 1.) Defendant Patricia I. Romero, Inc., is a California corporation registered in Guam as a foreign corporation, and at all times material to this lawsuit was doing business as Pacific West Builders ("PWB"). (Compl. ¶ 2; Ans. ¶ 4.)

On or about December 10, 2012, Dirt Doktor signed a contract with PWB to become a subcontractor to PWB's prime contract with Naval Facilities Marianas ("NAVFAC" or "the Government") to build the Red Horse Cantonment Operation Facility at Anderson Air Force Base, Guam. (Compl. ¶ 4; Ans. 6.) Dirt Doktor's scope of work included pouring and installing concrete foundations, roofing, overhangs, sidewalks, and other concrete-related installments. (Declaration of Patricia I. Romero, ECF No. 32-2 ¶ 14; Subcontract Addendum No. 1, ECF No. 10, Ex. A; Dirt Doktor's Ans. ¶ 1.) One of Dirt Doktor's responsibilities under the subcontract was to pour four concrete slabs on grade for the project's foundation. (Compl. ¶ 6; Ans. ¶ 8.)

As of March 1, 2013, Dirt Doktor had not yet begun the pour of the building foundations. (Romero Decl. ¶ 15; PWB's Ex. 3, ECF No. 32-6.) On or around March 20, 2013, PWB sent Dirt Doktor a 24-hour notice to cure. (*Id.* ¶ 16; PWB's Ex. 4, ECF No. 32-7.) On April 12, 2013, PWB sent a follow-up email regarding Dirt Doktor's unsatisfactory performance. (*Id.* ¶ 17; PWB's Ex. 5, ECF No. 32-8.)

3

After Dirt Doktor completed the pour, NAVFAC's contracting officer found the concrete slab to be unsatisfactory, and on June 5, 2013, PWB received a letter of concern from the Government in which it rejected the concrete slab and threatened to assess liquidated damages. (Romero Decl. ¶ 18; PWB's Ex. 6, ECF No. 32-9.) On or around June 6, 2013, PWB forwarded the letter of concern to Dirt Doktor, and the next day, Dirt Doktor submitted a plan of action to PWB to address the problems. (*Id.* ¶¶ 19–20; PWB's Exs. 7-8, ECF Nos. 32-10, -11.)

The Government sent second and third letters of concern to PWB on August 2 and 21, 2013, again detailing that Dirt Doktor's work was delayed and unacceptable, and threatening to assess liquidated damages. (Romero Decl. ¶ 21–22; PWB's Exs. 9-10, ECF Nos. 32-12, -13.) PWB wrote to Dirt Doktor on August 21, 2013, informing Dirt Doktor of the Government's rejection of Dirt Doktor's concrete slab and its threat to assess liquidated damages, and PWB advised Dirt Doktor and Firstnet Insurance that Dirt Doktor must replace the concrete slab and recover on the schedule. (*Id.* ¶ 23; PWB's Ex. 11, ECF No. 32-14.) In this same letter, PWB informed Dirt Doktor that it had disapproved payment of Dirt Doktor's invoices submitted for the periods ending March 30 ($101,196.32), April 30 ($109,588.68), May 31 ($69,147.98), and June 30 ($135,752.40), totaling $415,685.38, until the floor slab and overall work effort were in compliance with the project schedule. (PWB's Ex. 11.) At some point during this time period, Dirt Doktor submitted a plan to PWB and the Government in which it proposed to repair the slab instead of removing it. (PWB's Ex. 11 "You have already submitted a work plan for remediation of the floor slab ….") On August 23, 2013, the Government sent a letter to PWB describing multiple problems with Dirt Doktor's slab and stating that Dirt Doktor's proposed plan to repair the slab was unacceptable. (Romero Decl. ¶ 24; PWB's Ex. 12, ECF No. 32-15.) PWB then notified Dirt Doktor and Firstnet Insurance that the Government had given direction to remove

4

and replace the slab. (*Id*. ¶ 25; PWB's Ex. 13, ECF No. 32-16.) After learning that the Government rejected the proposed plan, Dirt Doktor notified PWB in writing that it disagreed with the Government's assessment. (Counterclaim ¶ 12, Dirt Doktor and FirstNet's Ans. ¶ 1.)

On August 27, 2013, PWB informed Dirt Doktor and FirstNet Insurance in writing that the Government had rejected Dirt Doktor's plan to repair the slab and had given explicit direction to replace the slab. (Romero Decl. ¶ 25; PWB's Ex. 13, ECF No. 32-16.) In the same letter, PWB demanded that Dirt Doktor begin removing the slab within 48 hours, but also agreed to forward Dirt Doktor's disagreement to the Government. (*Id*.) Finally, PWB notified Dirt Doktor that it cannot release any money to Dirt Doktor at the time. (PWB's Ex. 13 at 3.)

On August 29, 2013, Dirt Doktor submitted a plan to PWB for the slab demolition and replacement. (Romero Decl. ¶ 26; PWB's Ex. 14, ECF No. 32-17; Counterclaim ¶ 13, Dirt Doktor's Ans. 1.) On September 4 and 6, 2013, PWB provided Dirt Doktor with a schedule for the removal of the concrete slab. (Counterclaim ¶13; Dirt Doktor's Ans. ¶ 1.) On September 8, 2013, PWB issued a second 48-hour notice to cure to Dirt Doktor. (*Id.* at ¶ 14; Dirt Doktor's Ans. ¶ 7.)

On November 22, 2013, Dirt Doktor finished removing and replacing the concrete slab. (Counterclaim ¶ 15; Dirt Doktor's Ans. ¶ 8.) During this time, Dirt Doktor allegedly fell behind on other concrete-related tasks, such as installing storm drains, pouring walks, fine grading, etc. *Id.* Therefore, on December 20, 2013, PWB provided a third 48 hour notice to cure to Dirt Doktor, and informed Dirt Doktor that it must "bring all of its work current" by December 27, 2013 or be terminated. (Counterclaim ¶ 17; Dirt Doktor's Ans. ¶ 10.) In response, Dirt Doktor presented PWB with a revised schedule which proposed a completion date of its outstanding work by late January 2014 instead of December 27, 2013. (Counterclaim ¶18; Dirt Doktor's Ans.

5

¶ 11.) In response, PWB terminated the subcontract on December 30, 2013. (Compl. ¶ 14; Ans. ¶ 16.) The next day, Dirt Doktor filed the instant case against PWB and subsequently the Miller Act case against Travelers.

### III.    LEGAL STANDARDS

#### A. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is material if it might affect the outcome of the suit under the governing substantive law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A shifting burden of proof governs motions for summary judgment under Rule 56. *In re Oracle Corp. Securities Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). The party seeking summary judgment bears the initial burden of proving an absence of a genuine issue of material fact. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Where, as here, the moving party will have the burden of proof at trial, "the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

If the moving party meets that burden, the burden then shifts to the nonmoving party to set forth "specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 250. "The mere existence of a scintilla of evidence…will be insufficient" and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material

6

facts." *Id.* at 252; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Viewing the evidence in the light most favorable to the non-moving party, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.

## B. Contract Interpretation

Because the contract was performed in Guam, and the contract does not provide otherwise, Guam law governs the interpretation of the contract. 18 G.C.A. § 87112. When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if the language is clear and explicit, and does not involve any absurdity. 18 G.C.A. §§ 87104–05.

The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other, with particular clauses subject to general intent. 18 G.C.A. §§ 87107, 87116. A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, without violating the intent of the parties as it existed at the time of contracting. 18 G.C.A. §§ 87105, 87109.

The words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning, unless used by the parties in a technical sense, which then must be interpreted as usually understood by persons in the profession or business to which they relate, unless clearly used in a different sense. 18 G.C.A. §§ 87110–11. To establish a breach of contract, a plaintiff must prove (1) the existence of the contract, (2) the plaintiff's performance or excuse for nonperformance, (3) the defendant's breach, and (4)

7

resulting damages to the plaintiff. *Hemlani v. Hemlani*, 2015 WL 1955341 at *5, 2015 Guam 16 (Sup. Ct. Guam 2015).

## IV. DISCUSSION

Dirt Doktor asserts that PWB has been wrongfully withholding the sum of $738,936.67,[1] plus interest, for work Dirt Doktor performed under the subcontract for PWB. *See* Mot. at 2.

In a contract dispute, a plaintiff is entitled to summary judgment when "the contract terms are clear and unambiguous, even if the parties disagree as to their meaning." *United Bhd. of Carpenters & Joiners of Am., Lathers Local 42-L v. United Bhd. of Carpenters & Joiners of Am.*, 73 F.3d 958, 961 (9th Cir. 1996). Viewing the evidence in the light most favorable to the non-moving party, if the court determines that Dirt Doktor has established that PWB breached the contract, then Dirt Doktor is entitled to payment. The validity of the contract is not in dispute. The issue is whether Dirt Doktor performed or has an excuse for nonperformance.

Dirt Doktor asserts that it sufficiently performed under the subcontract (or is excused from performing) and is entitled to two different categories of payment at the summary judgment stage. First, Dirt Doktor states that PWB owes $73,958.26 in "retention" that PWB wrongfully withheld from payments to Dirt Doktor at a time when the Government was not withholding retention on its payments to PWB for the work Dirt Doktor performed. (Mot. at 5.) Second, Dirt Doktor states that PWB owes $627,452.31 in progress payments, covering the work performed from March through December 2013, which Dirt Doktor asserts was accepted and paid for by the Government. *See id.*; Subcontractor Payment Application at 2, ECF No. 30-2. In addition, Dirt

---

[1] The sum asked for in the Complaint was $777,550.36, but Dirt Doktor moves for summary judgment on the lesser amount of $738,936.67 because it states that it cannot ask for allegedly wrongfully withheld retention for the months after June 2013 because they were arguably properly withheld under Article III of the subcontract. *See* Mot. at 6, ECF No. 29.

8

Doktor maintains that any award in favor of Dirt Doktor resulting from this motion for summary judgment should be certified under FED. R. CIV. P. 54(b) to make it immediately enforceable. Mot. at 9.

Dirt Doktor also asked for a third category of payment: $37,526.10 on "force account" work. *See* Mot. at 5, ECF No. 29. In its reply brief, however, Dirt Doktor conceded that a dispute of genuine fact remains and therefore summary judgment cannot be granted as to the force account work.[2]

**A. Retention Withheld by PWB**

Dirt Doktor states that it is owed $73,958.26 in retention wrongfully withheld by PWB. *See* Mot. at 5. Dirt Doktor contends that PWB began withholding a 10 percent retention on payments to Dirt Doktor on work paid for by the Government from the beginning of the subcontract, although the Government did not begin withholding a 10 percent retention on payments to PWB until July 2013. *See* Reply at 3.

To support the assertion that PWB withheld a retention on payments at a time when the Government did not, Dirt Doktor submitted a summary of all payment requests and the one time payment received from PWB on May 24, 2013, showing that PWB deducted 10 percent from the one payment. (Subcontractor Payment Application at 2, Ex. 1, ECF No. 30-2.) Dirt Doktor also submitted a Freedom of Information Act (FOIA) response from the Government which, it contends, shows that the Government did not begin withholding a 10 percent retention until July 2013. *See* Ex. 4 and 5, ECF Nos. 30-5 and 30-6 (hereinafter "FOIA response").

_____

[2] PWB, in its Opposition, stated that Dirt Doktor is not entitled to any force account work for the disputed $37,536.10 amount unless and until it can prove that the Government paid PWB for the work. *See* Opp'n at 14–15. In Dirt Doktor's Reply, it conceded that it could not prove at the summary judgment stage that PWB had received payment from the Government on this amount. *See* Reply at 6.

9

PWD does not present evidence that contradicts Dirt Doktor's summaries of payment requests. Rather, it asserts that the exhibits on which Dirt Doktor relies have not been properly authenticated. PWD maintains that Camacho's declaration is not properly sworn under 28 U.S.C. § 1746 and that Camacho lacks personal knowledge to authenticate documents obtained from the Government through FOIA requests. (Opp'n at 11, 13.)

Dirt Doktor asserts that summary chart (Ex. 1) and the Navy Construction/Facilities Management Invoices (Ex. 5) are admissible under FED. R. EVID. 1006,[3] that Camacho's sworn declaration is not defective, and that personal knowledge of payments requested and received can be inferred from Camacho's position as general partner. *See* Reply at 3, 7.

The court finds that the proffered exhibits have been adequately authenticated. Section 1746 requires that an unsworn declaration be "subscribed by [the declarant], as true under penalty of perjury, and dated, in substantially the following form: . . . 'I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.'" 28 U.S.C. § 1746. Camacho's declaration begins: "I, John Camacho, hereby declare under penalty of perjury under the laws of the United States of America that the following statements are true[.]" ECF No. 30-1. The form suggested in § 1746 does not have to be followed precisely. *See Schroeder v. McDonald,* 55 F.3d 454, 460 n.10 (9th Cir. 1995). The substantive elements of section 1746 are that the declarant must "(1) 'declare (or certify, verify, or state),' (2) 'under penalty of perjury,' (3) that the matter sworn to is 'true and correct.'" *In re World Trade Center Disaster Site Litig.,* 722 F.3d 483, 488 (2d Cir. 2013).

---

[3] "The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. And the court may order the proponent to produce them in court." FED. R. EVID. 1006.

Whether this certification precedes or follows the statements themselves is not substantive. *See Barclay v. First Nat'l Bank of Talladega,* __ F. Supp. 3d __, 2016 WL 1270519, \*3 (N.D. Ala. Mar. 31, 2016) ("That Barclay's affirmation states that the *following* is true rather than that the *foregoing* is true is immaterial" (original emphasis)); *Anghel v. New York States Dept. of Education,* No. 15-CV-5914, 2016 WL 183540, at \*3 (E.D.N.Y. Jan. 14, 2016) (finding that declaration as to "following statements" comports with § 1746); *Olympic Chartering, S.A. v. Ministry of Indus. and Trade of Jordan,* 134 F. Supp. 2d 528, 532 n.2 (S.D.N.Y. 2001) (accepting as compliant with § 1746 declaration "that the following statements are made at my legal peril if untrue"). Neither is Camacho's declaration deficient because the word "correct" was left out. The plain language of the statute requires that the statement be subscribed only "as true under penalty of perjury," 28 U.S.C. § 1746, and Camacho has done so. Camacho's personal knowledge was attested with the words "based upon my own first hand knowledge" and can reasonably be inferred from Camacho's position as general partner. *See Barthelemy v. Air Lines Pilots Ass'n,* 897 F.2d 999, 1018 (9th Cir. 1990), and *In re Kaypro,* 218 F.3d 1070, 1075 (9th Cir. 2000).

There is no reasonable question that the Navy Construction invoices (Ex. 5) are authentic. "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." FED. R. EVID. 901(a). "The question of whether the authenticity of a document has been sufficiently proved prima facie to justify its admission in evidence rests in the sound discretion of the trial judge." *Arena v. United States,* 226 F.2d 227, 235 (9th Cir. 1955).

Camacho has declared under penalty of perjury that the Navy Construction invoices are the documents that Dirt Doktor received from the Government in response to its FOIA request.

11

This is prima facie proof that the documents are authentic. PWB has not presented evidence that would lead one to suspect that the documents are not what they purport to be. That is enough of a foundation for the court to admit Exhibit 5 as authentic. *Cf. Ortiz v. Hobby Lobby Stores, Inc.,* 52 F. Supp. 3d 1070, 1077-78 (E.D. Cal. 2014) (finding authenticity of attached document satisfied by sworn declaration of person with personal knowledge).

Dirt Doktor has proven that it is entitled to summary judgment on this claim as to amounts retained for December 2012 and January and February 2013. According to Article III of the subcontract:

> [I]f the owner shall withhold a retention from the Contractor, then Contractor may, at its sole and complete discretion, withhold a retention in equal percent from Subcontractor's payment. Said retention may be held until final completion and acceptance of all work covered by this subcontract and such percentage so retained shall not be considered monies due and owing until the Contractor has received final payment from the Owner[.]

Ex. A to PWB's Counterclaims, ECF No. 10 at 22.

Under a plain reading of this article, PWB is only entitled to withhold a retention if the Government withholds a retention. The article authorizing PWB to withhold a retention uses a clear and explicit "if, then" construction, demonstrating that PWB may only withhold a retention if the Government withholds a retention first.

Further, the FOIA response presents strong evidence that the Government did not begin to withhold a retention until July 2013. The FOIA response shows invoices between the Government and Patricia I. Romero for the Prime Contract N40192-10-D-2810-0003 (to build the Red Horse Cantonment Operations Facility at Andersen Air Force Base), which Romero confirmed is the correct Prime Contract number. *See* ECF No. 30-6, FOIA response at 19–46; Romero Decl. ¶ 5. The invoices also indicate which days Romero received payment from the Government. *Id.*

12

While the FOIA request covers a time span that is partially outside the period relevant to this case, the relevant invoices begin on page 19 of the exhibit, for an invoice dated December 13, 2012. That invoice, along with one dated April 25, 2013 (page 23), and July 12, 2013 (page 27) show "0.00" under the category "retention amount ($)," indicating that the Government did not withhold any retention for those payments. Beginning with an invoice dated July 19, 2013 (page 31), however, the retention category shows a dollar amount.

Dirt Doktor's Subcontractor Payment Application chart (ECF No. 30-2) shows that PWB made progress payments only for work done in December 2012 and January and February 2013. As to work performed beginning in March 2013, there is a dispute of genuine fact as to whether Dirt Doktor performed. Therefore, summary judgment in Dirt Doktor's favor as to retention amounts is proper only for the first three payment requests, during which PWB wrongly retained a total of $42,855.02 ($9,486.08 for December 2012, $27,224.47 for January 2013, and 6,144.47 for February 2013). Therefore, the court will grant summary judgment on the 10 percent retainage withheld by Defendant from December 2012 through February 2013 in the amount of $42,855.02.

**B.  Installment Payments Withheld by PWB**

Dirt Doktor contends that it is entitled to $627,452.31 in overdue progress payments for work completed by Dirt Doktor and paid for by the Government. *See* Mot. at 5. Dirt Doktor gives three reasons why it is so entitled: (1) it performed, or was excused from performing; (2) the Government paid for Dirt Doktor's work; and (3) there is no dispute over whether the subcontract allows for PWB to withhold payment.

//

/

13

1     *1. Plaintiff's performance*

2         Dirt Doktor states that PWB's failure to make progress payments justifies Dirt Doktor's

3     suspension of performance because a failure by PWB to pay periodic installment payments

4     constitutes a substantial and material breach going to the very essence of a contract, "even

5     entitling a subcontractor to stop work." Mot. at 4.

6         PWB contends that Dirt Doktor did not actually perform under the subcontract to be

7     entitled to payment; that is, Dirt Doktor's work was both late and unacceptable, thus Dirt Doktor

8     is not entitled to payment. *See* Opp'n at 17.

9         Dirt Doktor is not entitled to summary judgment on this claim because PWB puts forth

10    sufficient evidence that there is a genuine dispute of material fact whether Dirt Doktor was

11    justified in not performing, or possibly that Dirt Doktor simply was underperforming.

12        From the record, it appears that the Government first took issue with Dirt Doktor's work

13    on June 5, 2013. Romero Decl. ¶ 18. However, according to Romero, Dirt Doktor's performance

14    was poor long before that. PWB asserts that by March 1, 2013, Dirt Doktor was already behind

15    schedule "by as much as 52 days." *Id.* ¶ 15. On or around March 20, 2013, PWB sent Dirt

16    Doktor a 24-hour notice to cure. *Id.* ¶ 16. On April 12, 2013, PWB sent a follow-up email

17    regarding Dirt Doktor's unsatisfactory performance. *Id.* ¶ 17.

18        On or around June 6, 2013, PWB forwarded the Government's first letter of concern to

19    Dirt Doktor, and Dirt Doktor submitted a plan of action to PWB to address the problems. *Id.* ¶¶

20    19–20. The Government did not send a second letter of concern until August 2, 2013. *Id.* ¶ 21.

21        On August 21, the Government sent a third letter of concern. *Id.* ¶ 22. That same day,

22    PWB notified Dirt Doktor about the third letter and gave notice that it had disapproved payment

23    of Dirt Doktor's invoices for the periods ending March 30, April 30, May 31, and June 30, 2013

24

25

26

                                                  14

"until a solution is implemented for the remediation or removal and replacement of the floor slab and your work effort on the site overall is in accordance with the approved project schedule." (Ex. 11, ECF No. 32-14.)

The month of August 2013 shows that the Government took issue with Dirt Doktor's work, demanded that Dirt Doktor tear out and replace the slab, and that Dirt Doktor submitted a plan to replace the slabs, although Dirt Doktor still maintained that it disagreed with the Government's assessment. *Id.* ¶¶ 21–26. The fall months saw further dispute over Dirt Doktor's work, so it is unclear whether Dirt Doktor is entitled to payment. On September 4 and 6, 2013, PWB provided Dirt Doktor with a schedule for the removal of the concrete slab. Ans. at 13–14, ECF No. 10. By September 8, 2013, however, Dirt Doktor was allegedly already behind on the removal schedule, so PWB issued a second 48 hour notice to cure to Dirt Doktor. *Id.* at 14. It is unclear what changes Dirt Doktor undertook or did not undertake at that point, but on November 22, 2013, Dirt Doktor finished removing and replacing the concrete foundation. *Id.* During this time, Dirt Doktor allegedly fell behind on other concrete-related tasks, such as installing storm drains, pouring walks, and fine grading. *Id.* Therefore, because Dirt Doktor has not established that it performed completely under the subcontract during the months of March through December 2013, it is not entitled to summary judgment for those months. Furthermore, Dirt Doktor has failed to show that the Government has in fact paid PWB for Dirt Doktor's performance.

Dirt Doktor cites to *Manganero Corp. v. HITT Contracting, Inc.*, 193 F. Supp. 2d 88, 97 (D.D.C. 2002), for support for the proposition that a contractor's failure to make installment payments may justify nonperformance by a subcontractor. However, in that case, it was not disputed that the subcontractor performed sufficiently to be entitled to installment payments, and

15

it ceased to perform the remainder of its work only when the contractor failed to make the installment payments that were due. *Id.* at 90.

Viewing the evidence in the light most favorable to the nonmoving party, Dirt Doktor has not established that "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita*, 475 U.S. at 587. In fact, there is substantial evidence that Dirt Doktor did not perform sufficiently to be entitled to the progress payments from the months of March through December 2013. Therefore, the court will deny the motion to enter summary judgment on $627,452.31 in installment payments on the basis of performance or excuse for non-performance.

### 2. Government payment

Dirt Doktor claims that it is owed progress payments for the months of March through December 2013 because the work "was accepted and approved by the Federal Government which has paid PWB for the work performed by Plaintiff." Mot. at 2. Thus, Dirt Doktor is equating payment from the Government with performance of its duties under the subcontract.

In support, Dirt Doktor cites article III of the subcontract, which states in pertinent part:

> The Contractor agrees to pay, and the Subcontractor agrees to accept for the work herein described . . . payments as follows: . . . The Contractor shall within 7 working days of receipt of payment from the Owner [i.e., the Government] pay the Subcontractor for such work, labor, materials and services, excepting that if the owner shall withhold a retention from the Contractor, then Contractor may, at its sole and complete discretion, withhold a retention in equal percent from subcontractor's payment.

Ex. A to PWB's Counterclaims, ECF No. 10 at 22.

PWB counters that Dirt Doktor is not entitled to the progress payments at the summary judgment stage because it has not proven that there is no dispute that the Government paid PWB for Dirt Doktor's work. *See* Opp'n at 13. This court agrees.

Dirt Doktor has not established that it is entitled to the progress payments because the Government has paid PWB for Dirt Doktor's work. First, Dirt Doktor has not established that the language in article III equates Government payment with satisfactory performance. Nothing in the subcontract states that this is true, and there is evidence in the FOIA response that states the opposite.

The FOIA response by the Government contains several statements that cast doubt on Dirt Doktor's claims that the Government's payment is equivalent to performance. For example, the "Contractor Certification" in every invoice states: "This certification is not to be construed as final acceptance of a subcontractor's performance." *See, e.g.*, Ex. 5, ECF No. 30-6 at 22.

Further, the FOIA response has not established that the Government actually paid PWB. In the FOIA response, two "authorized government representatives" sign every invoice, make a recommendation to either approve, approve a reduced amount, or reject, and state that approval "[h]as been made by me or under my supervision and they conform to contract, except as noted herein or on supporting documents." Ex. 5, ECF No. 30-6 at 22. Following this, another "authorized government representative" certifies that a "voucher" is "correct and proper for payment" and finally, a "payment official" must check a box that the document is either accepted, processed, rejected, suspended, or available for recall. *Id.* This evidence indicates that there is a genuine dispute of material fact over whether the Government paid for the work completed by Dirt Doktor.

Because Dirt Doktor has not established that there is no dispute of material fact that the Government paid PWB for Dirt Doktor's work and that such a payment is equivalent to performance, the court will deny summary judgment on the $627,452.31 installment payments for the reason of payment by the Government.

17

### 3. PWB's ability under the subcontract to withhold payment

Dirt Doktor states that the parties did not agree anywhere in the subcontract to allow PWB to unilaterally hold back payments to Dirt Doktor for which PWB has been paid by the Government. Mot. at 6–7. Further, Dirt Doktor asserts that no section in the subcontract can be interpreted as being a forfeiture clause. *Id.* at 7.

Dirt Doktor further contends that subsection 20 of the general conditions of the subcontract is the only possible option for PWB to withhold payments, yet that it provides only for the withholding of Dirt Doktor's payments to pay "claims made by third parties against the Subcontractor, not by PWB." Mot. at 7. A broader reading allowing for PWB to recover under this subsection would, according to Dirt Doktor, work a "forfeiture of Plaintiff's rights to receive installment payments on work performed and paid by the Government." *Id.* Dirt Doktor further contends that subsection 20 applies only if PWB "receives notification" of claims made against the subcontractor. *Id.* at 8. Dirt Doktor asserts that PWB does not receive notification of its own claims, nor does the subsection state that it applies to claims made by the Government. *Id.*

In opposition, PWB states that several subsections in the subcontract, including subsections 6, 9, 20, and 22 of the General Provisions, Addendums 2 and 4, and Article I and III, "are to be read as a whole, collectively, concerning payments," and allow PWB to withhold the payments. *See* Romero Decl. ¶ 37.

Dirt Doktor has not established that the subcontract does not allow PWB to withhold payments. There are multiple subsections in the subcontract that could possibly allow such a withholding.

For example, according to PWB, it had to hire Korando Corporation to complete much of the remaining scope of work under the subcontract that Dirt Doktor was required to do but did

18

not complete, which allegedly cost PWB $277,952.51. Opp'n at 25, ECF No. 32. Pursuant to general condition subsection 9, PWB is potentially entitled to back charge Dirt Doktor for this entire amount (which includes 15 percent for PWB's overhead and profit as permitted).[4]

This is because a plausible reading of this clause is that PWB could terminate and replace Dirt Doktor, back charge Dirt Doktor the cost to complete Dirt Doktor's work plus 15 percent for PWB's overhead and profit, and most importantly, Dirt Doktor would be entitled to no further payment until its scope of work is finished. This clause alone presents a strong argument that PWB is authorized by the subcontract to withhold payments from Dirt Doktor.

Second, subsection 20 of the general conditions to the subcontract presents a genuine issue of material fact whether PWB can withhold Dirt Doktor's payments.[5] Dirt Doktor asserts that paragraph 20 does not apply to claims made by PWB, but the clause states that if PWB receives notification "of any claims" arising out of Dirt Doktor's failures to perform, PWB may withhold payment. This could arguably include PWB's own claims.

---

[4] Subsection 9 of the subcontract's general conditions provides that: "In the event that the Subcontractor shall fail to correct, replace, or re-execute faulty or defective work or fails to supply enough skilled workers and proper materials to diligently proceed with this Subcontract within the time provided for… or materially breaches its obligations under this Subcontract, the Contractor may, at its option, after forty-eight (48) hours written notice, provide any such labor and materials as may be necessary to supplement or replace subcontractor, and back charge against Subcontractor the cost thereof plus Contractor's overhead and profit at a combined rate of 15 percent of the cost. In the event that the Contractor exercises his option to terminate under this clause . . . Subcontract shall not be entitled to any further payments under this Subcontract until the work is finished." Subsection 9, General Conditions, Subcontract, Ex. A to PWB's Answer, ECF No. 10, at 36.

[5] Subsection 20 of the subcontract's general conditions provides that: "Should the Contractor receive notification of any claims made against the Subcontractor arising out of labor or materials furnished the project, or otherwise, on account of any actions or failures to act by the Subcontractor in the performance of this Subcontract, the Contractor may withhold such amounts of money due or to become due under this Subcontract to cover said claims and any costs or expenses arising or to arise in connection therewith pending legal settlement of such claims. This right shall not be exclusive of any other rights herein or by law provided." Subsection 20, General Conditions, Subcontract, Exhibit A of PWB's Answer, ECF No. 10 at 37.

19

Third, the subcontract contains a provision for damages arising out of delays caused by Dirt Doktor. Subsection 10 of the general conditions of the subcontract states that should Dirt Doktor be in default in the proper performance of work, thereby causing delay to PWB, Dirt Doktor "shall be liable for any and all loss and damages (direct or indirect) so sustained, including claims by other subcontractors against Contractor and/or claims or back charges by Owner against Contractor including but not limited to, any liquidated damages." Subsection 10, General Conditions, Subcontract, Exhibit A of PWB's Counterclaims, ECF No. 10 at 36.

Thus, PWB could arguably be authorized by the subcontract to withhold payment from Dirt Doktor not only for the Government's assessment of liquidated damages for delay, but also for PWB's extended overhead and general conditions, attorney's fees, and other costs incurred if Dirt Doktor caused the delays to the project.

Dirt Doktor is correct that forfeiture clauses are not favored and strictly interpreted against the party attempting to enforce forfeiture. *Milenbach v. C.I.R.*, 318 F.3d 924, 936 (9th Cir. 2003). *Milenbach,* however, was about payments on work that had already been completed. In the present case, there is a genuine dispute of material fact over whether Dirt Doktor completed work or was excused from performance, thus entitling it to payment.

Simply put, there are just too many clauses in the subcontract for the court to conclusively state, at the summary judgment stage, that no reasonable juror could find that PWB was entitled to withhold payment from Dirt Doktor. Therefore, the court will deny Dirt Doktor's motion for summary judgment on the $627,452.31 in installment payments because the subcontract does not allow for PWB's withholding of the payments.

//

/

20

**C. Certification of Judgment Under FED. R. CIV. P. 54(b).**

Dirt Doktor requests that the court certify any award of funds under FED. R. CIV. P. 54(b) to make the judgment immediately enforceable against PWB. *See* Mot. at 9, ECF No. 29. Rule 54(b) of the Federal Rules of Civil Procedure allows the court to direct entry of a final judgment as to one or more, but fewer than all, claims "only if the court expressly determines that there is no just reason for delay." FED. R. CIV. P. 54(b).

Because PWB has presented competent evidence that its counterclaims against Dirt Doktor may be substantial should it prevail, an entry of judgment on any sum awarded from this motion for summary judgment would be inappropriate. Because there is a just reason for delay, the court will not make the judgment immediately enforceable.


## V. CONCLUSION

For the reasons stated, the court ORDERS as follows:

1.      Summary judgment is GRANTED in favor of Plaintiff Camacho Family Partnership, d/b/a Dirt Doktor, on the claim for retention withheld by PWB at a time when the Government was not withholding retention, for the period from December 2012 through February 2013, in the amount of $42,855.02.

2.      Summary judgment is DENIED on Dirt Doktor's claim for wrongfully withheld installment payments in the amount of $627,452.31.

3.      Certification of the judgment under FED. R. CIV. P. 54(b) is DENIED.

SO ORDERED this 17th day of October, 2016.

RAMONA V. MANGLONA
Chief Judge, District of the Northern
Mariana Islands, sitting by designation