**IN THE DISTRICT COURT**
**FOR THE TERRITORY OF GUAM**

CAMACHO FAMILY PARTNERSHIP d/b/a
"DIRT DOKTOR,"

       Plaintiff/Counterclaim Defendant,

       v.

PATRICIA I. ROMERO, INC., d/b/a
"PACIFIC WEST BUILDERS,"

       Defendant/Counterclaim Plaintiff,
_____

AND ALL RELATED ACTIONS.

CIVIL CASE NO. 13-00026 (lead case)

**ORDER ON POST-TRIAL MOTIONS**

## I.      INTRODUCTION

      The parties, Plaintiff Camacho Family Partnership (doing business as Dirt Doktor) and

Defendant/Counterclaim Plaintiff Patricia I. Romero, Inc. (doing business as Pacific West Builders

("PWB")), have filed numerous post-trial motions in this case, following a verdict that the jury

returned on May 9, 2017. Dirt Doktor's motions (Plaintiff's Post-Trial Motions, May 26, 2017,

ECF No. 195) include a motion for prejudgment interest, a motion for attorney fees, a motion for

reconsideration of the Court's interlocutory order concerning PWB's counterclaim for liquidated

damages, motion for a new trial on the demolition and replacement cost claim and on the Military

Working Dog ("MWD") claim, and a motion to dismiss Counterclaim Defendant FirstNet

Insurance. In its own omnibus motion (Defendant/Cross-Complain[an]t Pacific West Buil[d]ers'

and Defendant Travelers Surety and Casualty Company's Post-Trial Motion, June 9, 2017, ECF

No. 203), PWB likewise moves for prejudgment interest and for attorney fees, and for a declaration

of the parties' rights with respect to the delay caused by Dirt Doktor. The motions were heard on July 6, 2017. Having considered the arguments of the parties at the hearing and in the briefing papers and accompanying documents, the Court now rules on the motions.

## II. BACKGROUND

Dirt Doktor agreed to serve as a subcontractor for PWB to build the Red Horse Cantonment Operation Facility at Anderson Air Force Base. Under the contract, Dirt Doktor was required, among other things, to place concrete slabs for the building. In exchange for the work, PWB agreed to pay a total of $1,315,518.00 in installments. (Subcontract ¶ III, Plaintiff's Ex. 991.) To obtain periodic progress payments, Dirt Doktor was required to submit estimates for "work actually performed." (*Id.*) PWB then had to make the progress payments within seven working days of receipt of payment from the United States Navy. (*Id.*) However, if the Navy withheld any payments from PWB, then PWB could "at its sole and complete discretion, withhold a retention in equal percent" from Dirt Doktor's payments, and the retained funds were not "considered monies due and owing until" PWB received final payment from the Navy. (*Id.*)

The general conditions incorporated into the contract stated that "time is of the essence" and therefore that Dirt Doktor must "complete all work according to the schedule" decided on by PWB. (General Condition Clauses ¶ 2, Plaintiff's Ex. 991.) Any requests for an extension of time to complete work were required to be submitted in writing within ten days of Dirt Doktor's learning that a delay may occur. (*Id.*)

If Dirt Doktor failed to "correct, replace or re-execute faulty or defective work" on schedule, PWB was required to give 48 hours' notice of the failure, and if the issue was not resolved, PWB could obtain a substitute subcontractor or provide the needed materials or labor and charge Dirt Doktor the costs plus any extra overhead and profit "at a combined rate of 15% of

the cost." (General Condition Clauses ¶ 9.) Further, if Dirt Doktor did not properly perform and caused the project to be delayed, PWB was entitled to "all loss and damages (direct or indirect)," including liquidated damages. (*Id*. ¶ 10.) Pursuant to PWB's contract with the U.S. Navy, the liquidated damages owed to the Government for delay was $5,850 per day, as set forth in N40192-10-D-2810. (*See* Contract, Defendant's Ex. ZD.) Dirt Doktor agreed to be bound to the contract with the Navy, including the work specifications and terms in N40192-10-D-2810. (*See* Addendum No. 3, Plaintiff's Ex. 991.)

Prior to trial, the Court found that PWB wrongfully retained $42,855.02 from the December 2012 through February 2013 payment applications submitted by Dirt Doktor because the Navy had not begun withholding a 10 percent retention at that time. (Order on Motion for Partial Summary Judgment 13, ECF No. 126.)

Following the trial, the jury found that Dirt Doktor did not substantially perform all of its material obligations under the Red Horse Subcontract but was legally excused. (Verdict 2, ECF No. 189.) Further, the jury found that PWB breached a material provision of the subcontract and awarded Dirt Doktor $733,020.55 in damages for total value of work completed minus amounts already paid. (*Id*. at 3; *see* Plaintiff's Ex. 1584.) On PWB's counterclaim, the jury found that Dirt Doktor had breached the contract, and awarded PWB $246,672.94 in damages for the cost to finish Dirt Doktor's work and extended overhead that PWB had to pay. (*Id*. at 4–5.) Further, the jury found Dirt Doktor to be liable to PWB for liquidated damages, if any, for 56.5 days. (*Id*.) At $5,850 per day, the liquidated damages award totals $330,525.00.

///

//

/

### III.    PREJUDGMENT INTEREST

#### A.  <u>Legal Standard</u>

Guam law, which controls in this diversity case involving contract claims, states that a "person who is entitled to recover damages certain, or capable of being made certain by calculation" is entitled to prejudgment interest from the date the claim accrued until judgment. 20 G.C.A. § 2110. Damages that are certain or capable of being made certain are those where "the defendant actually knows the amount owed or from reasonably available information" could have calculated the amount owed. *Guam Top Builders, Inc. v. Tanota Partners*, 2012 Guam 12 ¶ 68 (2012). Thus, "where there is a dispute between the parties concerning the basis of computation of damages" and the amount depends on resolution of conflicting evidence, "prejudgment interest is not allowable." *Id*. The prejudgment interest rate under Guam law is 6 percent unless the parties have agreed to a different amount. *See* 18 G.C.A. § 47106; *Yoshida v. Guam Transp. and Warehouse, Inc.*, 2013 Guam 5 ¶ 84 (2013).

#### B.  <u>Whether Dirt Doktor Is Entitled to Prejudgment Interest</u>

Dirt Doktor contends that it is entitled to prejudgment interest pursuant to 20 G.C.A. § 2110 at the statutory rate of 6 percent per annum. (Post-Trial Motion 5–6, ECF No. 195.) After taking into account the damages awarded, the Court's determination that Defendant wrongfully withheld 10 percent of the first three pay applications, and the damages owed to Defendant, Dirt Doktor claims it is owed $606,098.08 in damages plus prejudgment interest. (*Id*. at 8.) PWB argues that Dirt Doktor is not entitled to prejudgment interest because the damages awarded were not "certain" as required by statute due to the conflicting evidence on "whether Dirt Doktor caused project delays, the total project delay caused by Dirt Doktor, and the damages caused to PWB by Dirt Doktor that offset Dirt Doktor's claimed damages." (Def's. Brief 7, ECF No. 203.)

PWB's arguments do not resolve whether Dirt Doktor is entitled to prejudgment interest. Although the Guam Supreme Court has not explicitly ruled on the issue of whether offsets or counterclaims affect a plaintiff's entitlement to prejudgment interest, this Court finds that the Guam Supreme Court would likely hold that the certainty of offsets does not affect whether a plaintiff is entitled to prejudgment interest. The Guam Supreme Court has suggested in dicta in two related cases that "parties with a liquidated sum of damages" would be entitled to prejudgment interest "despite a potential unliquidated offset." *Asia Pacific Hotel Guam, Inc. v. Dongbu Ins. Co., Ltd. ("Asia Pacific II")*, 2015 Guam 3 ¶ 65 (2015); *Asia Pacific Hotel Guam, Inc. v. Dongbu Ins. Co., Ltd. ("Asia Pacific I")*, 2011 Guam 18 ¶ 34 (2011) (same). These two Guam Supreme Court cases relied on California case law, which requires that the only amount that must be certain or capable of calculation is the amount owed by the defendant. *See Asia Pacific I*, 2011 Guam 18 ¶¶ 61–65 (citing cases). A defendant's potential entitlement to an unliquidated offset from the same contract does not affect the certainty of a plaintiff's claim. *Great W. Drywall, Inc. v. Roel Const. Co., Inc.*, 166 Cal. App. 4th 761, 768 (2008). Given this case law from Guam and California, the Court concludes that Dirt Doktor's claim for prejudgment interest is not defeated by the fact that PWB sought liquidated and unliquidated damages from Dirt Doktor.

The jury in this case found that PWB breached its contract with Dirt Doktor by withholding $733,020.55 for work done. Under the terms of the contract, payment was due to Dirt Doktor seven days after PWB received payment from the Navy. Thus, Dirt Doktor submitted the value of actual work done to PWB, and PWB was required to pay that amount upon receipt of funds from the Navy. Additionally, PWB could withhold an amount equal to what the Navy withheld. The correct percentage is calculable by looking at the Navy's records. Based on these contractual terms, the amount owed to Dirt Doktor is capable of being made certain by calculation. Moreover, although

the parties disputed liability, PWB never denied the amounts in dispute with respect to Plaintiff's

claim for work done and the 10 percent of payments retained by the Navy. In other words, PWB

actually knew the amount of potential damages or "could calculate the amount based on

information reasonably available" to it, and therefore the damages claimed by Plaintiff are certain.

*Milhouse v. Travelers Commercial Ins. Co.*, 641 F. App'x 714, 718 (9th Cir. 2016) (citing *Uzyel*

*v. Kadisha*, 188 Cal. App. 4th 866, 919 (2010)); *see also Phoenix Eng'g and Supply Inc. v. Univ.*

*Elec. Co., Inc.*, 104 F.3d 1137, 1141 (9th Cir. 1997) (affirming award of prejudgment interest

under Guam law and finding claim was certain because the invoices and bills of lading showed

amounts due, and account reconciliations by defendant could be prepared to determine amounts

owed).

The amount owed to Dirt Doktor must be reduced by the amounts owed to PWB—the sum

of costs to finish Dirt Doktor's work, extended overhead incurred by PWB caused by Dirt Doktor,

and liquidated damages, for a total of $577,197.94—before prejudgment interest is applied. The

award must be offset "as of the due date of the original debt, and only the balance bears interest."

*Great W. Drywall,* 166 Cal. App. 4th at 768. Using Trial Exhibits 954–964, 967, 1209, 1237, and

1584, and the payment chart prepared by Joseph Camacho that reflect the evidence admitted at

trial (ECF No. 195-5),[1] the Court calculates that Dirt Doktor is owed $99,343.98 with interest

running from December 12, 2013, and $56,478.63 with interest running from January 4, 2014. As

reflected in the table below, all of the money owed to Dirt Doktor through August 2013 is offset

by the amount that Dirt Doktor owes to PWB. However, as of September–October 2013, Dirt

Doktor owes PWB only $10,101.08. Thus, Dirt Doktor is entitled to interest on the balance of

---

[1] The Court agrees with PWB that much of the information contained in the Camacho Declaration is incorrect. Nevertheless, the Court has used only the "value of work" numbers, which accurately reflects the jury's findings, to determine the amount of prejudgment interest to which Dirt Doktor is entitled.

$43,324.82 for that period; to interest on $56,019.16 for the period of November 2013; and on $56,478.63 for the period of December 2013.[2] Because the date that payment was due to Dirt Doktor for these two periods, from September to November 2013, was December 12, interest accrues from that date on $99,343.98. Payment for the last period December 2013 was due on January 4, 2014, and interest accrues from that date for the remaining $56,478.63 owed.

This calculation is reflected in the table below:

| DD Pay Periods | Value of Work | Retention by PWB | Date PWB Paid by Navy | Date Payment Due to DD | Amount Paid by PWB | Amount Owed to DD[3] |
|---|---|---|---|---|---|---|
| Dec. 2012 | $94,860.00 | $9,486.08 | 5/9/2013 | 5/16/2013 | $85,374.74 | $9,486.08 |
| Jan. 2013 | $272,244.72 | $27,224.47 | 5/9/2013 | 5/16/2013 | $245,020.25 | $27,224.47 |
| Feb. 2013 | $61,444.70 | $6,144.47 | 5/9/2013 | 5/16/2013 | $55,300.23 | $6,144.47 |
| Mar. 2013 | $112,440.35 | $11,244.04 | 5/9/2013 | 5/16/2013 | $0.00 | $112,440.35 |
| Apr. 2013 | $121,765.20 | $12,176.52 | 8/2/2013 | 8/9/2013 | $0.00 | $121,765.20 |
| May 2013 | $76,831.09 | $7,683.31 | 8/2/2013 | 8/9/2013 | $0.00 | $76,831.09 |
| June 2013 | $150,836.00 | $15,083.60 | 8/2/2013 | 8/9/2013 | $0.00 | $150,836.00 |
| July 2013 | $45,433.60 | $4,453.36 | 10/25/2013 | 11/1/2013 | $0.00 | $45,433.60 |
| Aug. 2013 | $16,935.60 | $1,693.56 | 12/5/2013 | 12/12/2013 | $0.00 | $16,935.60 |
| Sept.–Oct. 2013 | $53,425.90 | $5,342.59 | 12/5/2013 | 12/12/2013 | $0.00 | $53,425.90 |
| Nov. 2013 | $56,019.16 | $5,601.92 | 12/5/2013 | 12/12/2013 | $0.00 | $56,019.16 |
| Dec. 2013 | $56,478.64 | $5,647.85 | 12/27/2013 | 1/4/2014 | $0.00 | $56,478.64 |
| **Total:** | **$1,118,714.96** | **$111,781.77** | | | **$385,695.22** | **$733,020.55** |

Dirt Doktor claims to be owed significantly more in prejudgment interest (*see* ECF No. 195 at 7–8), but this calculation is flawed because it does not account for the $330,525 of liquidated damages owed to PWB even though this amount is on appeal. (*See* Part V *infra*.) PWB also argues that Dirt Doktor was not entitled to any payments until Korando and JSW's work was completed

---

[2] Although the exhibits state that the value of work is $56,478.64, the value has been reduced by one cent. This is because the jury relied on other exhibits stating the total value of work was $733,020.55, but the exhibits indicate the total is $700,020.56, potentially the result of an arithmetic error. The one cent difference is reflected in the amount awarded to Dirt Doktor and on which it may obtain prejudgment interest. *See Kowalski v. Mommy Gina Tuna Res.*, Case Nos. 05-00679, 06-00182, 2009 WL 855976, at *6 n.2 (D. Haw. Mar. 30, 2009) (using jury verdict to award prejudgment interest despite arithmetic error).

[3] The amount owed to Dirt Doktor is calculated as follows: (Value of Work) – (Amount Paid by PWB).

pursuant to paragraph 9 of the General Condition Clauses, which states that the subcontractor shall not be entitled to "further payments . . . until the work is finished" if terminated for failing to correct faulty work. (ECF No. 203 at 24; Tr. Ex. 991 at 006258.) However, Dirt Doktor was not terminated until December 30, 2013 (Tr. Ex. DD), and the jury found that the payments to Dirt Doktor up to that point were wrongly withheld. Further, the Navy paid PWB for the December 2013 work prior to Dirt Doktor's termination as subcontractor. Thus, until Dirt Doktor was officially terminated, it was entitled to all payments for which the Navy had paid PWB. Accordingly, the payments owed to Dirt Doktor for November through December 2013 should have been made within seven working days of the Navy paying PWB on December 5 and 27, 2013. Dirt Doktor shall be entitled to prejudgment interest consistent with this determination.

### C. Whether Defendant Is Entitled to Prejudgment Interest

PWB seeks prejudgment interest at the rate of 10 percent as set forth in General Condition Clauses ¶ 22. (Def's. Brief 18–19, ECF No. 203.)

As described above, any offsets from a damages award must be deducted before prejudgment interest will be applied. Here, Defendant was awarded $246,672.94 in damages for the cost of finishing the work and extended overhead, and an additional $330,525 in liquidated damages. Assuming Defendant is entitled under the contract to prejudgment interest on the $246,672.94—it has not sought prejudgment interest on the liquidated damages—no interest will be awarded. This is because the award, even including the liquidated damages, is less than what PWB owes to Dirt Doktor. Because the net judgment for PWB is negative, it is not entitled to any prejudgment interest. *See Great W. Drywall*, 166 Cal. App. 4th at 770 (holding party with net loss after amount owed to opposing party was deducted from award was not entitled to prejudgment interest).

# IV.   ATTORNEY FEES

Dirt Doktor asserts that it is entitled to attorney fees because it is the prevailing party in the litigation. Paragraph 18 of the General Condition Clauses of the subcontract states, in part: "Should either party to this Subcontract be required to initiate any legal action or proceedings to enforce the Subcontract, or to recover damages for the breach thereof, the losing party agrees to pay court costs and reasonable attorney's fees incurred by the prevailing party." (Plaintiff's Trial Ex. 991.) PWB claims attorney fees on two bases: (1) that it, not Dirt Doktor, is the prevailing party; and (2) that the indemnity provisions in the Red Horse and MWD subcontracts are enforceable separately and independently from the prevailing party determination. (PWB's Post-Trial Motion 6.)

## A.   Prevailing Party

Under Guam law, contractual provisions authorizing attorney fees are exceptions to the American Rule by which each party bears its own litigation expenses. *Rahmani v. Park,* 2011 Guam 7 ¶ 59. Hence, Paragraph 18, calling for the prevailing party to recover attorney fees, is enforceable.

As to the Red Horse subcontract, the jury verdict was in favor of Dirt Doktor on Dirt Doktor's primary claim but in favor of PWB on PWB's counterclaim, and the jury awarded damages to each side. As to the MWD subcontract, the jury found that neither party had substantially performed and awarded neither party damages.

In cases like this one, where the jury has returned a split verdict, the trial court must not merely consider which party was the net-judgment winner, but must "look at the lawsuit as a whole to determine which party, if any, prevailed." *Rahmani v. Park,* 2011 Guam 7 ¶ 64. Other factors include success on the merits of "any significant issue in litigation, and the proportion between what was sought by the party and what was actually recovered." *Id.* In exercising its sound

discretion, the court may determine that both sides prevailed, or that neither side prevailed, and that each side may recover its attorney fees from the other or that neither side is entitled to fees. *Id.* Where both parties prevailed on significant issues, it is within the court's discretion to make no award of attorney fees. *Id.*

Case law in other jurisdictions that have rejected the net-judgment rule helps elucidate the multifactor test. The focus is on which party prevailed on significant issues in the litigation and obtained the desired result. *Zhang v. D.B.R. Asset Management, Inc.,* 878 So. 2d 386, 387 (Fla. 3d DCA 2004) (per curiam). "Simply because a party has obtained some economic benefit as a result of litigation does not necessarily mean that party has succeeded on the major issue in the case." *Id.* Although an award of attorney fees to the prevailing party is the norm in contract litigation, the trial court has discretion to find no prevailing party so as to avoid "an unjust reward to a party whose conduct caused the failure of the contract[,]" especially in "cases in which the attorney's fees far exceed the claims for damages arising from the contract." *KCIN, Inc. v. Canpro Investments, Ltd.,* 675 So.2d 222, 223 (Fla. 2d DCA 1996); *accord Lasco Enter., Inc. v. Kohlbrand,* 819 So.2d 821, 826–27 (Fla. 5th DCA 2002) (citing *KCIN*). The trial court has authority to find no prevailing party in "cases in which the opposing litigants could each legitimately claim some success in the litigation." *Hsu v. Abbara,* 891 P.2d 804, 812 (Cal. 1995). If the "ultimate award of money damages does not adequately represent the actual success of the parties under the peculiar posture of the case[,]" *Mountain States Broad. Co. v. Neale,* 783 P.2d 551, 555 n.7 (Utah App. 1989), courts should consider several factors, including contractual language, the number of claims and counterclaims, the significance of the claims in the context of the lawsuit as a whole, and the dollar amounts sought and awarded for the various claims. *Crowley v. Black,* 167 P.3d 1087, 1091 (Utah App. 2007).

10

Neither party prevailed on their claims with respect to MWD. The jury found that neither Dirt Doktor nor PWB had substantially performed all of its material obligations and was excused performance under the MWD subcontract, and awarded no damages. The main claim, however, was Dirt Doktor's, for $163,147.05 withheld by PWB as a backcharge for work performed by another subcontractor PWB had to hire to finish the job. Although PWB did not recover any additional damages, by successfully defending against Dirt Doktor's substantial claim it came closer to achieving its litigation goals than Dirt Doktor did.

On the Red Horse project, the jury found that PWB must compensate Dirt Doktor for the work it had performed under the subcontract and for which PWB had withheld payment, totaling $733,020.55, but declined to award Dirt Doktor for force account work or the slab redo, totaling more than $225,000. In addition, it awarded PWB just under $250,000 for its costs to finish Dirt Doktor's work and extended overhead due to delay caused by Dirt Doktor, and over $330,000 in liquidated damages for 56.5 days of delay (at $5,850 a day). In their briefs and at the hearing, both parties made impassioned arguments as to why their side of the ledger is actually larger than it looks from the face of the verdict. What is apparent, however, is that each party's victory in damages is considerably less than it had hoped. PWB argued that Dirt Doktor was not entitled to receive any payment and expected that its own damages for "completion costs, extended overhead, liquidated damages, and other recoverable costs will be more than any contract amount due Dirt Doktor for timely and proper[l]y performed work." (PWB's Trial Brief, ECF No. 112, p. 12.) While PWB never denied that Dirt Doktor was entitled to payment for work done properly and on time, it vigorously disputed Dirt Doktor's computations, which the jury broadly accepted. On the other hand, while Dirt Doktor prevailed on its main issue – whether its performance of its material obligations under the Red Horse project was excused – it lost on a series of secondary issues of

significance to PWB.

Viewing the litigation as a whole, the Court cannot conclude that either party convinced the jury that it was predominantly in the right and that the other party was primarily responsible for the failures in the progress of the two projects. Each party prevailed on significant issues and can legitimately declare notable success on its claims and defenses. For these reasons, the Court finds that neither party is the prevailing party in this lawsuit, and on that basis awards attorney fees and court costs to neither party.

B.  Indemnification

PWB maintains that, independent of any determination concerning the prevailing party, Dirt Doktor is contractually obligated to indemnify it for any damages from Dirt Doktor's nonperformance. It locates this obligation in ¶ 1 of the General Condition Clauses of the subcontract, which states: "The Subcontractor agrees to hold and save harmless and to fully indemnify the Contractor for any and every liability arising out of the performance of work designated herein . . . and for damage or injury to the Contractor or to any other person arising out of the Subcontractor's failure to perform under the Subcontract." (Plaintiff's Ex. 991) Paragraph 1 further provides that if the subcontractor "fail[s] to defend or indemnify Contractor from such liability, Contractor may provide for his own defense, and the costs of the same, including but not limited to attorney's fees and court cost, shall be paid by the Subcontractor to contractor." (*Id.*)

PWB asserts that this contract language is substantially similar to the indemnification clause at issue in *Fargo Pacific, Inc. v. Korando Corp.,* 2006 Guam 22, which the Guam Supreme Court held required the subcontractor to indemnify the contractor, and in *Continental Heller Corp. v. Amtech Mechanical Services, Inc.,* 53 Cal. App. 4th 500 (1997), on which the *Fargo* court expressly relied. The *Fargo* subcontract's indemnification clause provided that the

"[s]ubcontractor shall indemnify the Contractor and Owner against, and save them harmless from, any and all loss, damages, costs, expenses and attorneys' fees suffered or incurred on account of any breach of the obligations and covenants of this section, and any other provisions or covenant of this Subcontract." *Fargo,* 2006 Guam 22 ¶ 44 n.4 (quoting subcontract).

Dirt Doktor replies that ¶ 1, entitled "Save Harmless/Insurance," is limited to third-party claims. (Plaintiff's Reply/Opp., ECF No. 207, pp. 4–5, 8–10.) It points out that the subcontract has a separate clause, ¶ 18, devoted exclusively to "Legal Fees," that awards attorney fees and court costs to the prevailing party in lawsuits brought to enforce the subcontract. It argues that Guam statutory and common-law rules of construction favor awarding attorney fees only under ¶ 18.

The Guam Code requires that contracts be "so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting . . ." 18 G.C.A. § 87102. For written contracts, "the intention of the parties is to be ascertained from the writing alone, if possible[.]" 18 G.C.A. § 87105. "The whole of the contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." 18 G.C.A. § 87107. When the language is ambiguous or uncertain, "the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist." 18 G.C.A. § 87120.

Standing alone, by its plain language ¶ 1 would require Dirt Doktor to pay PWB's legal fees and costs arising out of Dirt Doktor's breaches of material provisions of the Red Horse and MWD contracts. The paragraph calls on Dirt Doktor to fully indemnify PWB "for any and every liability arising out of the performance of work designated herein" and expressly includes "damage or injury to the Contractor . . . arising out of the Subcontractor's failure to perform" as one of those liabilities. Hence, "such liability" in the second sentence of the paragraph, on attorney fees and court costs, would encompass damage to PWB from Dirt Doktor's breach of contract.

Guam law permits construing a general indemnity provision to apply not only to third-party claims but also to claims between the parties. In *Fargo Pacific Inc. v. Korando Corporation* (Guam 2006), the Guam Supreme Court considered indemnity and save-harmless language substantially similar to that in ¶ 1 of the PWB–Dirt Doktor subcontract. 2006 Guam 22 ¶ 44 n.4. It found that the clause's effect was not limited to third-party claims, and that the clause required the subcontractor to indemnify the contractor for its legal fees arising from the subcontractor's breach. *Fargo Pacific,* 2006 Guam 22 ¶¶ 52, 54. In reaching that conclusion, it reasoned that to find otherwise would render the clause superfluous, because a different clause expressly provided for indemnity against third-party claims. *Id.* ¶ 47. "If we were to read paragraph 13(d) [indemnity for breach] as merely enlarging paragraph 13(c) [indemnity for third-party claims], it would render this language meaningless, and the law prevents us from interpreting a contract in such a way as to render parts of it surplus." *Id.*

Thus, under Guam law, ¶ 1 must be harmonized, if practicable, with ¶ 18, which expressly allocates the prevailing party's attorney fees and court costs to the losing party. Every part of the contract relating to legal fees can be given effect if the language of ¶ 18 is read naturally to say that if one party sues the other, the prevailing party is awarded attorney fees and court costs, and if ¶ 1 is understood to relate only to third-party actions.

PWB argues that it would be "entirely consistent" for the parties to have intended more than one basis for one party to recover attorney fees against the other. (Reply 7, ECF No. 210.) But it would not be so here. For example, if the Court had found that Dirt Doktor was the prevailing party in the litigation as a whole, under ¶ 18 it would have been obliged to order PWB to pay all Dirt Doktor's court costs and reasonable attorney fees without splitting out the fees and costs arising from individual claims and counterclaims that PWB won. Likewise, had PWB been the

prevailing party, Dirt Doktor would have had to pay all PWB's costs and fees, not merely those arising from PWB's successful counterclaim on the slab redo. Those results would be inconsistent with enforcing a first-party indemnification provision in ¶ 1. If a party could still seek indemnification despite not "prevailing," then the prevailing-party analysis would be meaningless.

*Fargo Pacific* does not compel a different outcome. The contractual provisions at issue in that case did not "contain a reference to whether a party prevailed or not." *Fargo Pacific,* 2006 Guam 22 ¶ 53 ("the contractual provision between Fargo and Korando does not allow attorney's fees to the prevailing party").

Moreover, to the extent that the language at issue in ¶ 1 creates uncertainty when read together with ¶ 18, Guam statute (18 G.C.A. § 87120) requires that the ambiguity be read in favor of the party who did not draft the agreement. *See Govt. of Guam v. Pacificare Health Ins. Co. of Micronesia, Inc.,* 2004 Guam 17 ¶ 24 n.18 (observing that as a matter of Guam law, ambiguity must be resolved against the maker of the ambiguous provision). As testimony at trial made clear, the drafter of the subcontract was PWB. Therefore, the uncertainty must be resolved in favor of Dirt Doktor.

For these reasons, Court finds that ¶ 18 of the subcontract between Dirt Doktor and PWB controls the award of any attorney fees and court costs in litigation between the parties, and that ¶ 1 is limited indemnification of PWB for third-party claims against it.

## V.    MOTION FOR RECONSIDERATION OF CONTINGENT JUDGMENT

In its counterclaim for breach of the Red Horse subcontract, PWB sought to recover for potential liquidated damages that might by assessed against PWB by the Armed Forces Board of Contract Appeals. The appeals process is ongoing, and PWB informed the Court that the appeal would not be heard until summer 2018. During the trial, PWB filed a motion (May 1, 2017, ECF

No. 172) to amend its counterclaim to conform to the proof and add a declaratory relief claim. On May 3, after hearing argument from the parties, the Court granted the motion. (Transcript 51, ECF No. 208.) The question of liability for liquidated damages went to the jury, which found that Dirt Doktor was liable for 56.5 days of delay. If the appeals board holds PWB responsible for all or part of the 113 days' delay in the project's completion, Dirt Doktor will be liable to PWB for $330,525.00 (56.5 days at $5,850.00 a day).

Under Rule 54(b) of the Federal Rules of Civil Procedure, Dirt Doktor asks the Court to reconsider its order – Dirt Doktor calls the order interlocutory, PWB calls it declaratory – allowing the amount of PWB's counterclaim for liquidated damages to be contingent on the eventual outcome of PWB's administrative appeal to the Armed Forces Board of Contract Appeals. Dirt Doktor argues that such a declaration is precluded by the Miller Act, which provides that the subcontractor "may prosecute the action [against the contractor] to final execution and judgment for the amount due." 40 U.S.C. § 3133(b)(1). In support, Dirt Doktor cites to cases that stand for the proposition that a subcontractor may press its claims against the contractor in district court without having to wait on the outcome of the contractors' administrative action before the appeals board. *See Fanderlik-Locke Co. v. U.S. for the Use of Morgan,* 285 F.2d 939 (10th Cir. 1960); *United States v. Zurich Am. Ins. Co.,* 99 F. Supp. 3d 543 (E.D. Pa. 2015).

Dirt Doktor's argument is without merit. All of Dirt Doktor's own claims were prosecuted in the jury trial, and the Court will enter judgment on those claims for the amount due. That is to say, Dirt Doktor is getting a prompt remedy for its grievances without having to wait while PWB undertakes an administrative appeal on the subcontractor's behalf. The declaratory judgment with respect to liquidated damages is on PWB's counterclaim, not on Dirt Doktor's Miller Act claims.

## VI.    MOTIONS FOR A NEW TRIAL

Dirt Doktor moves for a new trial on (1) the claim for the cost of the slab redo and (2) the MWD claim.  Rule 59 of the Federal Rules of Civil Procedure gives the district court discretion to grant a new jury trial on any issue "for any reason for which a new trial has heretofore been granted in an action at law in federal court[.]" Fed. R. Civ. P. 59(a)(1)(A). In the Ninth Circuit, a new trial may be granted "only if the verdict is contrary to the clear weight of the evidence, is based on false or perjurious evidence, or to prevent a miscarriage of justice." *Molski v. M.J. Cable, Inc.,* 481 F.3d 724, 729 (9th Cir. 2007) (quoting *Passantino v. Johnson & Johnson Consumer Prods.,* 212 F.3d 493, 510 n.15 (9th Cir. 2000)). "[E]rroneous jury instructions, as well as the failure to give adequate instructions, are also bases for a new trial." *Murphy v. City of Long Beach,* 914 F.2d 183, 187 (9th Cir. 1990). A jury's verdict may not be disregarded if there is a view of the case that harmonizes the jury's answers to special interrogatories. *Duk v. MGM Grand Hotel, Inc.,* 320 F.3d 1052, 1058–59 (9th Cir. 2003).

### A.    Slab Redo

Dirt Doktor moves for a new trial on its claim for the additional work of demolishing and redoing the slab on grade, in the amount of $221,753.65. (Compl. ¶ 9, ECF No. 1.) The jury awarded no damages on that claim. (Jury Verdict, Question No. 5(c).) Dirt Doktor asserts that the jury must have ignored substantial evidence that the defective slab could have been repaired and that the contracting officer's decision to order it demolished and redone was arbitrary. During the trial, the jury heard evidence that PWB had submitted a Request for Equitable Adjustment ("REA") to the Government, which included a request for the Navy to pay an additional $179,202.56 to compensate PWB and Dirt Doktor for the allegedly unnecessary slab redo. The Court did not allow Dirt Doktor to put the whole REA into evidence or to present evidence that the Government had approved the pass-through claim. With respect to the REA, the Court

instructed the jury as follows: "You have heard testimony about another proceeding, concerning a Request for Equitable Adjustment, or REA. In your deliberations, you need not concern yourselves with the REA proceeding." (Amended Jury Instructions, ECF No. 184, p. 21.) Dirt Doktor asserts that this instruction was confusing and misled the jury to believe it should disregard competent evidence. (Plaintiff's Post-Trial Motions 15–16.)

The jury's verdict on the slab redo was not contrary to the clear weight of the evidence. The jury heard testimony and received documentary evidence that the slab did not meet agreed specifications for the water-cement ratio, that elevations were uneven, and that uniform slope was not maintained. The jury's failure to award Dirt Doktor damages for the slab redo comports with the conclusion, supported by the evidence, that the slab defects were Dirt Doktor's fault.

The Court does not find the jury instruction on the REA proceeding to have been misleading or confusing. The instruction clearly separates out the proceeding from the REA itself. Excerpts from the REA were read into the record, and the Court did not strike them or instruct the jury to disregard them. The fact that the jury found Dirt Doktor responsible for only half of the delay owing to the slab redo indicates that they considered exculpatory evidence that the defects in the slab could have been remediated in less time than it took to redo the slab from scratch.

B. <u>Military Working Dog</u>

In a series of special interrogatories (Question Nos. 11–12 and 16–17), the jury found that neither Dirt Doktor nor PWB substantially performed all their material obligations under the MWD subcontract, and that their nonperformance was not legally excused. Having made those findings, the jury was instructed to skip questions about harm to each party by the other's breach and to forego deciding damages (Questions No. 13–15 and 18–20). Dirt Doktor asserts that in the event both parties breached, the jury should have been tasked to make a finding of comparative damages.

The Court finds no merit in this argument. It is consistent that the jury found Dirt Doktor was not entitled to payment of $163,147.00 – Dirt Doktor's claim – for work it did not perform satisfactorily, while also finding on PWB's counterclaim that PWB was not entitled to damages for increased construction costs, delay, and other additional costs.

## VII. MOTION TO DISMISS SURETY FIRSTNET INSURANCE

Dirt Doktor moves to dismiss its surety, Counterclaim Defendant FirstNet Insurance Company, from the lawsuit. It asserts that the performance bond (*see* ECF No. 10, pp. 40–42) has been exonerated because (1) Dirt Doktor is the net judgment winner and PWB has been withholding payment to cover its claims against the bond, and (2) PWB is in default. Under ¶ 3 of the bond, FirstNet's obligation arises only "[i]f there is no Owner Default," which is defined at ¶ 12.4 to be "Failure of the Owner . . . to pay the Contractor as required by the Construction Contract or to perform and complete or comply with the other terms thereof." With respect to this performance bond, PWB is the "Owner" and Dirt Doktor is the "Contractor." PWB responds that (1) the amount of damages has not conclusively been determined yet, and (2) notwithstanding an owner default, under ¶ 6.2 of the bond FirstNet is obligated for "[a]dditional legal, design professional and delay costs resulting from Contractor's [Dirt Doktor's] Default." Furthermore, PWB maintains that that parties' fact stipulation 3(h) in the Pretrial Order (Apr. 21, 2017, ECF No. 163), that "any verdict in favor of PWB and against Dirt Doktor for breach of contract damages . . . on the Red Horse project shall also be against first Net for the same amount," trumps the bond's owner default language.

By the plain terms of the performance bond, FirstNet is not obligated. Paragraph 6.2 comes into effect only "[a]fter the Owner [PWB] has terminated the Contractor's [Dirt Doktor's] right to complete the Construction Contract[.]" (Performance Bond ¶ 6.) Owner termination is a condition

precedent to the surety's obligation (*id.* ¶ 3.2), but only "[i]f there is no Owner Default." (*Id.* ¶ 3). The performance bond in question uses form A312 of the American Institute of Architects. The Guam Supreme Court has not construed the language of ¶ 3, but other courts have found that it "creates conditions precedent which must be satisfied by the owner . . . before the surety has any obligation under the Bond." *Mid-State Sur. Corp. v. Thrasher Eng'g, Inc.*, 575 F. Supp. 2d 731, 741 (S.D.W.V. 2008) (citing *Enter. Capital, Inc. v. San-Gra Corp.*, 284 F. Supp. 2d 166, 179–181 (D. Mass. 2003), and *Bank of Brewton, Inc., v. Int'l Fid. Ins. Co.*, 827 So. 2d 747, 753 (Ala. 2002)). The pretrial order did not modify the terms of the bond, but merely memorialized the parties' stipulation of facts (be they accurate or not) that would not require proof at trial.

## VIII.   CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

(1) Dirt Doktor's motion for prejudgment interest is GRANTED IN PART, and PWB is ordered to pay Dirt Doktor $99,343.98 with 6 percent interest per annum running from December 12, 2013, and $56,478.63 with 6 percent interest per annum running from January 4, 2014.

(2) PWB's motion for prejudgment interest is denied.

(3) Neither party is the prevailing party in the litigation as a whole, and on that basis neither party is awarded attorney fees and court costs. The motions of Dirt Doktor and PWB for attorney fees as the prevailing party are DENIED.

(4) PWB's motion for indemnification is DENIED.

(5) Dirt Doktor's motion for reconsideration of the contingent (declaratory) judgment is DENIED.

(6) Dirt Doktor's motions for a new trial on demolition and replacement cost claim (slab redo) and the MWD claim are DENIED.

(7) Dirt Doktor's motion to exonerate FirstNet Insurance Company is GRANTED. FirstNet is dismissed from these actions.

**SO ORDERED** on March 21, 2018.

_____
RAMONA V. MANGLONA, Designated Judge